UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DEVIN R. JOHNSON,

   Plaintiff,

             Case No. 1:25-cv-846

  v.

             JUDGE DOUGLAS R. COLE

THE CITY OF OXFORD, et al.,

   Defendants.

## OPINION AND ORDER

Defendants The City of Oxford, Officer Matthew Blauvelt, and Officer Paul Hellwarth (the Oxford Defendants), acting collectively through one motion, move to dismiss Plaintiff's Amended Complaint (Doc. 4), under Federal Rule of Civil Procedure 12(b)(6). (Doc. 9). Defendants Mark P. Weisman and Weisman Enterprises Holdings, Inc. (the Weisman Defendants), acting through another motion, seek the same result. (Doc. 8). For the reasons explained below, the Court **GRANTS** the Weisman Defendants' motion and **GRANTS** the Oxford Defendants' motion **IN PART**.

## BACKGROUND[1]

Plaintiff Devin R. Johnson initiated this case on November 18, 2025. (Compl., Doc. 1). Fifteen days later, on December 3, 2025, Johnson filed an Amended

---

[1] Because this matter is before the Court on a motion to dismiss, the Court accepts the factual allegations in the complaint as true and relies on them to describe the background below. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quotation omitted). That said, the Court reminds the reader that they are still only allegations at this point.

Complaint as of right. (Doc. 4); *see* Fed. R. Civ. P. 15(a)(1)(A). At bottom, the Amended Complaint alleges that Defendants violated Johnson's Fourth Amendment rights by either using or conspiring to use excessive force to effectuate Johnson's November 18, 2023, arrest. (*See* Doc. 4, #24–25). That arrest occurred outside the Brick Street Bar, a popular Weisman-owned venture located in uptown Oxford. (*Id.* at #24, 27). Johnson asserts (1) a claim against Officers Blauvelt and Hellwarth in their personal and official capacities under 42 U.S.C. § 1983 for allegedly violating Johnson's Fourth Amendment rights, (2) a *Monell* claim against the City of Oxford, and (3) a civil conspiracy claim against the Weisman Defendants. (*Id.* at #36–41).

According to Johnson, the chain of events that led to his arrest began in the wee hours of November 18, 2023. (*Id.* at #28). Johnson, a 20-year-old African American student at Miami University (which is located in Oxford), was patronizing Brick Street, a favorite haunt among "young people" and "college students" in Oxford. (*Id.* at #27–28). Brick Street is a bar that charges an admission fee, which Johnson had paid. (*Id.* at #28). At around 1:00 am, Johnson stepped out of the establishment to get some air. (*Id.*). But when he tried to reenter, he discovered that he had exited from "a door that didn't allow for reentry." (*Id.*). Johnson then spotted a handful of patrons leaving from a side door. (*Id.*). So he opted to reenter Brick Street that way. (*Id.*).

Brick Street employees "immediately" confronted Johnson upon his reentry, though Johnson says he did not identify them as employees "due to the late hour, large crowd, noise, and lighting." (*Id.*). Johnson says that the employees "physically

assaulted" and "eject[ed]" him from the establishment. (*Id.*). Once outside, another Brick Street employee joined the fray and helped take Johnson to the ground. (*Id.*).

While the fracas was still ongoing, Officer Blauvelt responded to the scene due to a Brick Street employee calling 911 (or perhaps radioing the police directly) to report that a fight had broken out in front of the bar. (*Id.* at #29). When he arrived, Blauvelt found two Brick Street employees holding Johnson face down on the sidewalk. (*Id.* at #29–30). According to Johnson, he was not aware of "who had taken him to the ground or why." (*Id.*). Nor did Johnson realize that an officer had arrived at the scene, as Blauvelt did not announce his presence. (*Id.* at #30). At this point, Johnson "attempted to adjust his position." (*Id.*). Johnson, who claims he was still unaware of Blauvelt's presence, says that he was not resisting arrest when he undertook that movement. (*Id.*). But regardless, Officer Blauvelt "forcibly pushed [Johnson] to the ground by his face," and "delivered three closed-fisted strikes to the back of [Johnson's] head and neck." (*Id.* at #30–31).

Officer Hellwarth arrived at the scene shortly thereafter. (*Id.* at #31). Once present, Hellwarth and Blauvelt proceeded to "violently kick[]" or "knee[]" Johnson "at least once," notwithstanding that Blauvelt and the Brick Street employees had already subdued Johnson. (*Id.*). At that point, Blauvelt and Hellwarth placed Johnson's wrists in handcuffs. (*Id.*). It was then that Johnson, for the first time, "understood Blauvelt and Hellwarth to be police officers." (*Id.* (emphasis omitted)).

The officers then took Johnson to the local police station, where they charged him with criminal trespass, underage intoxication, resisting arrest, and assault. (*Id.*

3

at #32). The officers then drove Johnson back to his dorm. (*Id.*). About a month later, on December 26, 2023, the Oxford Police Department placed Blauvelt on administrative leave for excessive force after a video of the incident surfaced on Tik Tok, the popular social media website and application. (*Id.*). But Johnson was ultimately found guilty of assault and resisting arrest, two misdemeanor convictions, for which he received one year of probation, 180 days suspended for the assault conviction, 90 days suspended for the resisting-arrest conviction, and a $1,000 fine. (*Id.* at #35).

According to Johnson, though, there was more to the presence of Officers Blauvelt and Hellwarth at the scene that night than met the eye. It turns out that Blauvelt was working "a detail assigned to Brick Street" that evening. (*Id.* at #28). The Weisman Defendants had allegedly been paying for the detail "pursuant to an informal arrangement" since before 2020. (*Id.*). Under that arrangement, the Oxford Police Department would provide the Weisman Defendants with "armed, uniformed public police officers with the power to detain and make arrests as a private security force." (*Id.* at #29). In exchange, the Weisman Defendants would pay the department and "supply it with a digital surveillance network of most, if not all, of the Uptown business district." (*Id.*). Indeed, Oxford police officials allegedly have at-will access to Brick Street's network for "official business and unofficial business." (*Id.*).

After Johnson's arrest and the public attention that followed, the Weisman Defendants allegedly worked with Oxford police to supply "cherry-picked surveillance footage" and "carefully tailored the statement" regarding the involvement of the Brick

Street employees. (*Id.* at #33). Johnson points to several email messages that, he says, suggest that Weisman and Oxford police were "working together to manage the fallout from the Tik Tok video." (*Id.*). Given the Oxford Police Department's involvement with the Weisman Defendants, Johnson alleges that the Weisman Defendants were "co-conspirators" in "depriving [Johnson] of his civil rights." (*Id.* at #35).

All Defendants have now moved to dismiss. (Docs. 8, 9). The Weisman Defendants argue that they did not act under color of state law. (Doc. 8, #52–53). They deny that Johnson has adequately pleaded their involvement in a conspiracy with the Oxford police, (*id.* at #53–55), and their involvement in depriving Johnson of a constitutional right, (*id.* at #55–56). Beyond that, the Weisman Defendants argue that they cannot be liable under a civil conspiracy theory because neither the officers nor the City are themselves liable for a substantive § 1983 claim. (*Id.* at #56–60). The Oxford Defendants, on the other hand, take a narrower tack. They argue that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Johnson's personal-capacity claims against Blauvelt and Hellwarth. (Doc. 9, #65–66). They also argue (or at least strongly imply) that the same doctrine bars the official-capacity claims against the two officers, as well as Johnson's *Monell* claim against the City (which is essentially another way of saying the same thing). (*Id.* at #67).

Johnson has responded. (Docs. 14, 16). And each group of Defendants has replied. (Doc. 15, 17). So the matter is ripe for review.

5

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "sufficient factual matter … to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). While a "plausible" claim for relief does not require a showing of probable liability, it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint must allege sufficient facts to allow the Court "to draw the reasonable inference that the defendant is liable." *Id.*

"In reviewing a motion to dismiss, [the Court] construe[s] the complaint in the light most favorable to the plaintiff, draw[s] all reasonable inferences in [his] favor, and accept[s] all well-pleaded allegations in the complaint as true." *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 310 (6th Cir. 2021). But that does not mean the Court must take everything a plaintiff alleges at face value, no matter how unsupported. The Court may disregard "naked assertion[s]" of fact, "formulaic recitation[s] of the elements of a cause of action," and "mere conclusory statements." *Iqbal*, 556 U.S. at 678 (cleaned up). Additionally, the Court may grant a motion to dismiss "on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) (citations omitted).

## LAW AND ANALYSIS

**A.     The *Heck* Doctrine Bars Johnson's Personal-Capacity § 1983 Claims Against Officers Blauvelt and Hellwarth in Part.**

The Oxford Defendants contend that Johnson's personal-capacity § 1983 claim against Blauvelt and Hellwarth is *Heck*-barred. (Doc. 9, #65–67; Doc. 17, #131–34). The Court agrees in part.

"In *Heck*, the Supreme Court held that a plaintiff cannot assert a § 1983 claim if success on that claim would 'necessarily imply the invalidity' of an underlying state criminal conviction, unless the plaintiff can 'prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 608 (6th Cir. 2014) (quoting *Heck*, 512 U.S. at 486–87). Johnson's Amended Complaint concedes that he "was found guilty of misdemeanor charges of assault and resisting arrest" in 2024. (Doc. 4, #35). And the pleading does not assert that the conviction has been reversed, expunged, or otherwise invalidated. So the key question is whether success on the § 1983 excessive force claim Johnson asserts here would "necessarily imply" the invalidity of either of Johnson's convictions. *Heck*, 512 U.S. at 486.

Generally speaking, excessive force claims directed at the manner of arrest do not imply the invalidity of a post-arrest conviction. *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010). But the Sixth Circuit helpfully has identified two situations in which *Heck* does bar a § 1983 excessive force claim in that context. *Hayward*, 759 F.3d at 608. "The first is when the criminal provision makes the lack of excessive force an element of the crime [of conviction]." *Schreiber*, 596 F.3d at 334. "The second is when excessive force is an affirmative defense to the crime." *Id.* (citing *Cummings v. City of Akron*, 418 F.3d 676. 684 (6th Cir. 2005)). That is because, in both situations,

7

"the § 1983 suit would seek a determination of a fact that, if true, would have precluded the conviction." *Hayward*, 759 F.3d at 609 (cleaned up).

*Hayward* also provides some guidance in the specific context of a conviction under Ohio's resisting-arrest statute. Although *Hayward* acknowledged some confusion in Ohio law as to whether the absence of excessive force is an element of the crime of resisting arrest, Ohio law is clear that excessive force constitutes at least an affirmative defense. *Id.* at 610–11. And either way, "a § 1983 claim of [pre-arrest] excessive force would necessarily imply the invalidity of an underlying conviction for resisting arrest." *Id.* at 611. At the same time, *Heck* does not "bar § 1983 suits alleging *post-arrest* excessive force" because such a claim does "not necessarily imply the invalidity of the underlying conviction for resisting arrest." *Id.* (emphasis in original). So, if the claim rests solely on *pre*-arrest officer conduct, it is *Heck*-barred, but to the extent it attacks *post*-arrest officer conduct, it is not.

That said, a word is in order regarding the meaning of the word "arrest" in this context. Although *Hayward* uses that term to draw the line between barred and unbarred conduct, the Court does not read the decision to turn on when the plaintiff is "arrested" in the legal sense. Rather, the *Hayward* inquiry is factual. The question is whether "the alleged excessive force is used *after* the suspect *ceases resisting arrest*," or in other words after the suspect is subdued. *Id.* at 612 (citation omitted) (second emphasis added); *see also id.* at 612 n.4 (describing the inquiry as whether the force occurred after the "resistance and the completion of the arrest"). Thus, a court applying the *Heck* bar "must carefully examine the facts and the temporal

sequence of the underlying offense and the alleged unconstitutional conduct." *Id.* at 612. Applications of force that occur before a plaintiff is subdued constitute pre-arrest acts (meaning the *Heck* bar applies); applications of force that occur after are post-arrest acts (meaning that it does not).

Against that backdrop, the Court concludes that *Heck* bars some, but not all, of Johnson's amended complaint. In Johnson's view, each application of force on the part of Blauvelt and Hellwarth constitutes post-arrest force because the Brick Street employees succeeded in subduing Johnson, thus putting him "out of the fight before Officer Blauvelt arrived on the scene." (Doc. 16, #118). But that can't be right. An Ohio jury convicted Johnson of resisting *the officers*. (*See* Doc. 4, #35). So, as a logical matter, it simply cannot be that Johnson was subdued before the first officer (Blauvelt) arrived at the scene. Any such conclusion in this case would directly contradict Johnson's conviction.

So the question for *Heck* purposes is whether Johnson's amended complaint plausibly alleges any excessive force *after* the point at which the officers succeeded in subduing Johnson. While the amended complaint is not a model of clarity on this front, the Court, drawing all reasonable inferences in Johnson's favor, concludes that paragraphs 45 and 46 of the amended complaint plausibly allege that the officers applied force after Johnson was subdued. (*See* Doc. 4, #31 ¶¶ 45–46). To put that in perspective, an earlier paragraph alleges that when Officer Blauvelt arrived, he "forcibly pushed [Johnson] to the ground by his face." (*Id.* at #30 ¶ 42). That allegation gives rise to a plausible inference that Officer Blauvelt had succeeded in subduing

9

Johnson. Then, the same officer allegedly "delivered three closed-fisted strikes to the back of [Johnson's] head and neck." (*Id.* at #31 ¶ 45). And in paragraph 46, Johnson alleges that Hellwarth and Blauvelt "violently kicked and kneed [Johnson] in his side, at least once, despite [Johnson] being subdued." (*Id.* at #31 ¶ 46). Johnson says that he was not, at this point, "actively or passively resisting, being verbally defiant, ignoring lawful instructions, or behaving in any way threatening to the police or anyone else." (*Id.*). Thus, at least without the benefit of discovery and a fleshed out factual record, the Court concludes that an excessive-force claim based on the force alleged in paragraphs 45 and 46 would not be *Heck*-barred. But Johnson's § 1983 claim may not proceed on the allegations that the officers applied force before that point.[2] That said, the Court notes that the result might be different on, say, a summary-judgment motion. If Johnson cannot show that he was, in fact, subdued at that point, then the force alleged in paragraphs 45 and 46 might ultimately be *Heck*-barred.[3]

In short, at least as to the allegations of force that precede paragraphs 45 and 46 of the amended complaint, Johnson's success on his § 1983 claims would

---

[2] For example, Johnson's claim may not rely on the force alleged at paragraph 42. (*See* Doc. 4, #30 ¶ 42 ("Blauvelt forcibly pushed [Johnson] to the ground by his face.")). The bar also applies to Johnson's allegation that he was not aware that the officers were present before they placed his writs in handcuffs. In the Court's view, that assertion—i.e., that Johnson was unaware that he was resisting the officers—would constitute a valid defense to the resisting-arrest conviction. Thus, the allegation contradicts the fact of Johnson's conviction and is therefore barred.

[3] More broadly, the Court notes that the precise line separating barred from unbarred conduct is, at this point, interlocutory, and can be revisited later in light of what the record demonstrates after discovery. The bottom line is that Johnson's claim can go forward for now, but with the understanding that more factual development may or may not bar that claim in part or in its entirety.

necessarily imply the invalidity of his underlying state-court conviction for resisting arrest. That portion of his claim is thus *Heck*-barred. But Johnson may proceed on the applications of force alleged in paragraphs 45 and 46, subject to the understanding that those allegations, too, might be *Heck*-barred on a more fully fleshed-out factual record.

**B.      The *Heck* Doctrine Bars Johnson's *Monell* Claim Against the City in Part; it also Bars Johnson's Official-Capacity Claim Against Officers Blauvelt and Hellwarth in Part.**

Turn now to Johnson's *Monell* claim against the City. The Oxford Defendants contend that *Heck* bars this claim, too. (Doc. 9, #66–67; Doc. 17, #133–34). Again, the Court agrees in part.

"Given that '*Monell* claims allow for municipal liability for the constitutional violations of their employees only where the municipality's policy or custom led to the violation,' 'there can be no liability under *Monell* without an underlying constitutional violation.'" *Codrington v. Dolak*, 142 F.4th 884, 896 (6th Cir. 2025) (quoting *Chambers v. Sanders*, 63 F.4th 1092, 1101–02 (6th Cir. 2023)). In other words, Johnson's *Monell* claim "rise[s] and fall[s] with the success" of his underlying § 1983 claim. *Id.* So, because the Court has already determined that Johnson's § 1983 claim is *Heck*-barred in part, that same conclusion extends to Johnson's *Monell* claim.[4] *See Lee v. United States*, No. 21-1738, 2022 WL 17076779, at *2–3 (6th Cir. July 14, 2022) (affirming dismissal of plaintiff's claims, including his *Monell* claim against the City of Detroit,

---

[4] The Oxford Defendants rest their request for dismissal solely on the *Heck* bar and do not press a separate *Monell* argument. (*See generally* Docs. 9, 17). So the Court does not reach the separate question of whether Johnson has plausibly alleged that the allegedly excessive force applied against him here arose out of a municipal policy or custom.

on the ground that they were *Heck*-barred); *Shero v. Williams*, No. 25-cv-1687, 2025 WL 1416771, at *4 (E.D. Pa. May 15, 2025) (collecting cases for the proposition that *Heck* bars municipal-liability claims based on underlying *Heck*-barred conduct). Likewise, Johnson has sued Blauvelt and Hellwarth in their personal and official capacities. (Doc. 4, #24). Because the official-capacity claims are functionally equivalent to *Monell* claims, *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985), the partial *Heck* bar applies to Johnson's official-capacity claims as well.

**C.**    **Johnson's § 1983 Civil Conspiracy Claim Against the Weisman Defendants Fails Because Johnson Has Failed to Allege an Agreement to Violate Johnson's Rights.**

Although the Weisman Defendants do not expressly press a *Heck* argument, the partial *Heck* bar described above extends to Johnson's civil conspiracy claim. Generally, "[a] claim for civil conspiracy under § 1983 exists only where the plaintiff has established a separate and actionable constitutional injury." *Rapp v. Dutcher*, 557 F. App'x 444, 450 (6th Cir. 2014) (citations omitted). So, "in the absence of a viable underlying constitutional claim, [Johnson's] § 1983 civil conspiracy claim [would] fail[] as a matter of law." *Bartko v. Goetz*, No. 24-1084, 2025 WL 2175970, at *7 (6th Cir. June 24, 2025) (citing *Stricker v. Twp. of Cambridge*, 710 F.3d 350, 365 (6th Cir. 2013) (concluding that because "there was no underlying constitutional violation" there was no conspiracy claim based on the defendant's actions)); *see also Holland v. Cnty. of Macomb*, No. 16-2103, 2017 WL 3391653, at *2 (6th Cir. Mar. 17, 2017) (affirming district court's dismissal of conspiracy claim under *Heck*). Because

12

Johnson's civil conspiracy claim "depends entirely on the viability" of his underlying § 1983 Fourth Amendment claim, *Rapp*, 557 F. App'x at 450, *Heck* narrows, but does not eliminate, Johnson's civil conspiracy claim.

But that is not an end to the matter. The Weisman Defendants offer several arguments against Johnson's civil conspiracy claim, one of which the Court finds dispositive. Specifically, they argue that Johnson fails to plausibly allege "the existence of any agreement, explicit or tacit" between the Weisman Defendants and the Oxford Defendants to violate Johnson's rights. (Doc. 8, #54).

"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985). "To prove [civil] conspiracy, [a] plaintiff[] must show (1) 'that there was a single plan,' (2) 'that the alleged coconspirator shared in the general conspiratorial objective,' and (3) 'that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.'" *Rieves v. Town of Smyrna*, 67 F.4th 856, 862 (6th Cir. 2023) (quoting *Hooks*, 771 F.2d at 944). A plaintiff need not prove an express agreement or detailed knowledge of the illegal plan. *Id.* (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)). Circumstantial indications of agreement are sufficient so long as the conspiracy claim is "pled with some degree of specificity" and does not rely on "vague and conclusory allegations." *Id.* (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). Additionally, "[p]ersonal involvement" in the alleged acts is not required. *Id.* at 863 (collecting cases).

13

Against that backdrop, the Court concludes that Johnson fails to state a civil conspiracy claim against the Weisman Defendants. True, Johnson alleges that, on the night of the incident, Blauvelt was working a detail assigned to Brick Street, an arrangement that the Weisman Defendants and the Oxford Police Department entered into in 2018. (Doc. 4, #28, 32). But that does not amount to a "plan" or a "general conspiratorial objective" to violate Johnson's constitutional rights. *Rieves*, 67 F.4th at 862 (quoting *Hooks*, 771 F.2d at 944). Nor does it amount to an agreement "to violate the constitutional rights of certain patrons of Brick Street bar generally," as Johnson asserts. (Doc. 4, #39). Even drawing all reasonable inferences in Johnson's favor, the arrangement amounts, at most, to an agreement between the Weisman Defendants and the Oxford Police Department to provide general security services at Brick Street. Thus, Johnson alleges no "obviously illegitimate purpose" that actuated the arrangement. *Rieves*, 67 F.4th at 864. So he does not allege facts suggesting a "single plan" to injure Johnson (or anyone else) in which the Weisman Defendants participated. And absent that (or some other indication that the parties agreed to an unlawful conspiracy, rather than a general peacekeeping arrangement, *see id.*), his civil conspiracy claim fails. *See id.* at 862.

Johnson resists this conclusion by pointing to the portions of the amended complaint that allege post-incident collusion between the Weisman Defendants and the Oxford Police Department. (*See* Doc. 14, #96; Doc. 4, #32–35). But even taken as true, those communications do not plausibly suggest that the Weisman Defendants conspired with Oxford Police to "injure" Johnson by "unlawful action." *Hooks*, 771

14

F.2d at 943–44. At most, they suggest that, once the incident occurred, the Weisman Defendants worked with Oxford Police to, for example, supply "cherry-picked surveillance footage" in effort to quell public backlash. (Doc. 4, #33). And Johnson alleges no violation of his rights based on *that* conduct. (*See id.* at #39–41).

In sum, because Johnson fails to allege a plan or agreement to injure him through unlawful activity, his civil conspiracy claim must be dismissed.

### CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Weisman Defendants' Motion to Dismiss (Doc. 8), **WITH PREJUDICE**, and **GRANTS** the Oxford Defendants' Motion to Dismiss (Doc. 9), **IN PART**. Consistent with that, the Court **TERMINATES** Weisman Enterprises Holdings, Inc., and Mark. P. Weisman as Defendants in this matter and **LIFTS** the April 2, 2026, discovery stay.

**SO ORDERED.**

July 20, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

15